**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MARY EDWARDS, | : | |
| Plaintiff | : | Civil Action |
| v. | : | No. 05-CV-4468 |
| | : | |
| MEDIA BOROUGH COUNCIL, et al., | : | |
| Defendants. | : | |

**EXPLANATION AND ORDER**

Plaintiff Mary Edwards ("Edwards"), a property owner in Media, Pennsylvania, brings this suit against defendants Media Borough Council (the "Borough"), Media Planning Commission (the "Planning Commission"), and Media Zoning Board (the "Zoning Board"), alleging discrimination on the basis of race and retaliation in violation of 42 U.S.C. §§ 1983 and 1985, and in violation of the Fair Housing Act, 42 U.S.C. § 3600-3620 ("FHA"). Jurisdiction is appropriate based on the existence of a federal question pursuant to 28 U.S.C. § 1331. The Complaint was filed August 22, 2005.

Edwards alleges that the defendants discriminated against her under color of state law based on her race and in retaliation for her social activism and statements against the government of Media. The discriminatory and retaliatory actions alleged in the Complaint all relate to two pieces of real property that Edwards owned in Media, and that she attempted to sell in 2000: 334 N. Orange Street and 525 N. Orange Street. Edwards alleges that the Borough lowered the value of her properties by issuing $500,000 in fines for property violations, that the Zoning Board refused to grant a variance that would increase the value of her properties, and that the Planning

Commission polled her neighbors on the request for a variance, leading to its denial. The Complaint alleges that defendants committed these acts on the basis of Edwards's race, and in retaliation for her past political activism, which included running for office in Media.

Currently before me is the defendants' Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6). Defendants argue that plaintiff's §§ 1983 and 1985 claims should be dismissed as barred by the statute of limitations; that Edwards lacks standing to pursue a claim under the FHA; that her claims regarding property violations should be dismissed because they are the subject of a state court action;[1] and that her claims of retaliation fail because she has not pled any specific protected activity or causal connection between protected activity and the defendants' allegedly retaliatory acts.

## A. FACTS[2]

Plaintiff Mary Edwards, a senior citizen on a small, fixed income, is "a social activist and a life-long resident of Media[,] Delaware County." (Compl. ¶¶ 10, 16.) She participated in many demonstrations against defendants' allegedly anti-African-American policies, and was mentioned

---

[1] At the time the defendants filed their motion to dismiss, the state court matter was pending in the Appellate Division of the Commonwealth Court of Pennsylvania, Borough of Media v. Mary Edwards, Civ. Action No. 1071-CD-2005. The motion to dismiss requested that I abstain from deciding those claims while the state court matter was pending. Since then, on February 9, 2006, the Commonwealth Court issued an unreported opinion affirming the Court of Common Pleas. See Borough of Media v. Mary Edwards, No. 1071 C.D. 2005 (Feb. 9, 2006) (J. Leavitt). Therefore the case is no longer pending and res judicata, not abstention, is the relevant inquiry.

[2] As required when ruling on a motion to dismiss, the facts as averred by plaintiffs are accepted as true for purposes of this motion. Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996). "But a court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).

in many newspaper articles for her activism. (Id. ¶ 11.) Edwards had been a candidate for office in Media Borough, and some Media officials saw her as an "an antagonist." (Id. ¶ 12.) Edwards alleges that all three defendants conspired together to hinder her ability to sell her property, and to discriminate and retaliate against her by using their citation and zoning power, in violation of state and federal laws. (Id. ¶¶ 21, 31, 37.)

In 2000, Edwards owned two pieces of real property adjacent to the Media Courthouse: 334 N. Orange Street and 525 N. Orange Street. (Id. ¶ 13.) Beginning in 2000, the Borough issued numerous citations to Edwards for maintenance violations on both properties. (Id. ¶ 15.) On or about April 10, 2000, Edwards placed these properties up for sale. (Id. ¶ 14.) The Borough continued to issue violations, even though the properties were not "imminently dangerous" and the Borough knew that they were likely to be torn down. (Id. ¶¶ 17-18.) Most of the citations were issued on or about March 26, 2002. (Compl. Ex. A ¶ 4.) The violations built up to over $500,000 in fines at one point, creating "a chilling effect which made it difficult for plaintiff to sell the properties, at the price they were worth." (Compl. ¶ 19.) The Borough never offered Edwards assistance in correcting the violations, "like they often do to White American senior citizens." (Id. ¶ 20.)

Sometime after placing her properties on the market, Edwards received an offer from a developer to buy 334 N. Orange Street. (Id. ¶ 22.) The sale of the property was contingent upon a variance to allow the developer to build five townhouses on the property. (Id. ¶ 23.) The Zoning Board denied the request for a variance three times, even after the developer modified the plan to include only four townhouses, at the suggestion of the Zoning Board. (Id. ¶¶ 24-25.) The most recent denial occurred on or about October 18, 2001. (Compl. Ex. A ¶ 7.) The Complaint

alleges that other African-Americans were denied similar variances to build townhouses on properties in the same area, while white Americans have continued to receive variances to build townhouses on their properties in the same area. (Compl. ¶¶ 26-27.)

During the time that Edwards was requesting a variance at 334 N. Orange Street, Paul Robinson, chairman of the Planning Commission,[3] polled Edwards's neighbors on their opinion regarding her request for a variance. (Id. ¶ 32-34.) The poll[4] found that a majority of the neighbors disapproved of the variance. (Id. ¶ 35.) Such a poll had never been circulated regarding a request for a variance by any white property owner in Media. (Id. ¶ 36.)

The Zoning Board also denied Edwards's request for a variance to build five townhouses on the 525 N. Orange Street property when a different developer offered to buy it subject to approval of the variance. (Id. ¶ 28.) The variance was only approved for four, instead of five, townhouse units, and the Zoning Board refused to allow access from the property to Orange Street even though Edwards' family has accessed Orange Street from the driveway for more than fifty years. (Id. ¶¶ 28-29.) Around the same time,[5] the Zoning Board granted a variance to build 45 townhouses on a property directly across the street from 525 N. Orange Street that was owned

---

[3] The Complaint also states that he was vice-chairman of the Planning Commission at that time. (Compl. ¶ 32.)

[4] In her Complaint, Edwards refers to the circulated material as both a poll and a petition, but describes it as "polling" the neighbors regarding her variance request rather than advocating any particular course of action. I refer to it as a "poll" in this explanation.

[5] The time of the zoning actions related to 525 N. Orange Street is unclear. The Complaint does not state any time, and the PHRC complaint filed April 18, 2002 merely states that Edwards recently came to a tentative agreement with a developer for the property and feared that the defendants would deny the variance to inhibit the sale of the property. (Compl. Ex. A ¶ 10.)

by a white American. (Id. ¶ 30.)

On April 18, 2002, Edwards filed a complaint with Pennsylvania Human Relations Commission ("PHRC") and with the federal Department of Housing and Urban Development ("HUD") against all three defendants alleging that they discriminated against her on the basis of race and retaliated against her for her activism by issuing her citations and denying her requests for zoning variances.[6] (Compl. Ex. A; Pl.'s Opp. Mot. Dis. Ex. A.) HUD sent Edwards a letter on May 22, 2002 acknowledging receipt of her administrative complaint, stating that it would be processed by the PHRC, and notifying her of her right to commence a civil action in federal court. (Pl.'s Opp. Mot. Dis. Ex. B.) The PHRC sent Edwards two letters, on August 20 and August 29, 2003, dismissing her complaint for lack of probable cause and notifying her of her right to file a complaint against defendants in the Court of Common Pleas pursuant to 43 P.S. § 962(c).[7] Edwards filed the instant suit in federal court on August 22, 2005.

On January 12, 2005, before Judge Harry J. Bradley in the Court of Common Pleas of Delaware County, the Borough of Media agreed with Edwards to resolve her outstanding property fines by having Edwards pay $1,500 and release all claims against the Borough except those related to the denial of a variance at 334 North Orange Street.[8] (Tr. 1/12/05 at 8a, 17a.)

---

[6] At that time, the Zoning Board had already denied variances for the property at 334 N. Orange Street three times, but only had a belief – that turned out to be correct – that she would also be denied variances on her 525 N. Orange Street property. (Compl. ¶¶ 6, 8.)

[7] A dismissal by the PHRC grants a complainant the right to sue under the Pennsylvania Human Relations Act ("PHRA") within two years of its receipt. 43 Pa.C.S. §962(c). Edwards has not made any claims under the PHRA in this suit.

[8] At my request, defendants supplied me with copies of the appellate filings in the state case.

Edwards refused to sign the written agreement after assenting to it in court, and on May 9, 2005, Judge Bradley entered an order to enforce the settlement agreement.[9] On September 2, 2005, Edwards appealed Judge Bradley's order to the Commonwealth Court of Pennsylvania, and on February 9, 2006, the Commonwealth Court (J. Leavitt) issued an unreported opinion affirming it. See Borough of Media v. Mary Edwards, No. 1071 C.D. 2005 (Feb. 9, 2006) (J. Leavitt).

On March 1, 2006, Edwards's counsel sent a copy of the Commonwealth Court opinion to my chambers and to opposing counsel with a cover letter acknowledging that Edwards gave up her rights to bring claims other than those specified in the agreement.[10] (Doc. #12, Letter from Williams to Court of 3/1/06.) Therefore Edwards's other claims stemming from code enforcement at both properties and zoning issues at 525 N. Orange Street are barred.

---

[9] The order stated that

> ...the office of Judicial Support shall enter a judgment in favor of Plaintiff and against Defendant, Mary Edwards, in the amount of $1,500.00. It is hereby further ORDERED and DECREED that pursuant to the Agreement of the parties, Plaintiff releases all claims against the Borough of Media except for a claim stemming from zoning issues relating to 334 North Orange Street, which was the subject of the PHRC Complaint filed of which a finding of no probable cause was made. It is hereby further ORDERED and DECREED that the Borough of Medial [sic] releases all claims against Mary Edwards upon receipt of payment in the amount of $1,500.00

(Order, May 9, 2005 in consolidated civil actions No. 03-050752 - 04-050373, Ct. of Comm. Pl. of Delaware Co. (J. Bradley).)

[10] In pertinent part, the letter from Edwards's counsel stated:

> The Court affirmed the lower court Order enforcing the Agreement. In the Agreement, plaintiff gave up claims against defendants regarding code enforcement and all parties agreed that plaintiff was free to assert the claims against defendants that were filed with the Pennsylvania Human Relations Commission regarding their denial of a variance.

(Doc. #12, Letter from Williams to Court of 3/1/06.) The agreement in fact specified that Edwards retained only those claims related to zoning at 334 N. Orange Street.

## B. STANDARD OF REVIEW

Defendants filed these motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. A motion to dismiss pursuant to Rule 12(b)(6) challenges the legal sufficiency of the complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir.1993). A court may dismiss a complaint only if it appears that the plaintiff "could prove no set of facts that would entitle him to relief." Alston v. Parker, 363 F.3d 229, 233 (3d Cir. 2004). A court must accept all of the plaintiff's allegations as true and attribute all reasonable inferences in his favor. Nami v. Fauver, 82 F.3d 63, 65 (3d Cir.1996). In doing so, the court need not credit plaintiff's "bald assertions" or "legal conclusions." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).

## C. DISCUSSION

Because several of Edwards's claims are barred by the agreement, I need only discuss the defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) in reference to her remaining claims related to zoning issues at 334 N. Orange Street.[11] Those claims are that defendants violated 42 U.S.C. §§ 1983 and 1985 and the FHA by discriminating and retaliating against Edwards in polling her neighbors on her variance request and in denying that request. In support of their motion to dismiss, defendants argue that the statute of limitations bars Edwards's claims under §§ 1983 and 1985, that Edwards has no standing to pursue a claim under the FHA,

---

[11] The Court of Common Pleas order, affirmed by the Commonwealth Court, found that Edwards had agreed to release the Borough from all claims except those related to zoning at 334 N. Orange Street. (Order, May 9, 2005 in consolidated civil actions No. 03-050752 - 04-050373, Ct. of Comm. Pl. of Delaware Co. (J. Bradley).) The matter was still pending before the Commonwealth Court at the time the defendants filed their Motion to Dismiss.

and that she has not pled sufficient facts to support retaliation by the defendants based on any protected activity she may have engaged in. For the reasons that follow, defendants' motion is granted.

1. Edwards's Claims Under 42 U.S.C. §§ 1983 and 1985

Edwards's §§ 1983 and 1985 claims relating to the Borough's denial of her variance requests for 334 N. Orange Street are barred by the statute of limitations. Section 1983 claims are subject to state statutes of limitations governing personal injury actions. Garvin v. City of Philadelphia, 354 F.3d 215, 220 (3d Cir. 2003); Lake v. Arnold, 232 F.3d 360, 368-69 (3d Cir. 2000). The applicable Pennsylvania statute of limitations is two years. 42 P.S. § 5524(7). The Third Circuit has held that § 1985(3) claims "are subject to the same limitations period" as § 1983 claims. Bougher v. Univ. of Pittsburgh, 882 F.2d 74, 79 (3d Cir. 1989). To comply with the statute of limitations, Edwards had to file suit within two years of the alleged discrimination and conspiracy against her.

The Complaint does not on its face reveal when the variance requests for 334 N. Orange Street were denied, stating merely that the Zoning Board denied the requests "[o]n 3 separate occasions." (Compl. ¶ 24.) The issue is clarified in Edwards's PHRC complaint, submitted as Exhibit A to the Complaint, which avers that the most recent of the three denials "occurred on or about 10/18/01."[12] (Compl. Ex. A. ¶ 7.) Thus according to Edwards's own attachment to her

[12] Among the documents that courts may consider in deciding motions to dismiss pursuant to Rule 12(b)(6) are exhibits that a plaintiff attaches to the complaint. Lum v. Bank of America, 361 F.3d 217, 222 n. 3 (3d Cir. 2004), citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

Complaint, the last allegedly discriminatory act related to the variance, and thus the last overt act of any alleged conspiracy by defendants, occurred on October 18, 2001. Two years from October 18, 2001 is October 18, 2003, which was a Saturday. Under both 1 P.S. § 1908 and Federal Rule of Civil Procedure 6(a), if the last day of a limitations period falls on a Saturday or Sunday, the period runs until the end of the following Monday. Therefore, the last day for Edwards to file a complaint within the statute of limitations was Monday, October 20, 2003, almost two years before she filed her Complaint on August 22, 2005.

Equitable tolling does not allow Edwards to maintain her §§ 1983 and 1985 claims after filing this late. Statutes of limitations for federal laws may be tolled where the plaintiff "in some extraordinary way has been prevented from asserting his or her rights." Robinson v. Dalton, 107 F.3d 1018, 1022 (3d Cir. 1997) (citing Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1387 (3d Cir. 1994). The three general situations where equitable tolling is appropriate are "(1) where a defendant actively misleads a plaintiff with respect to her cause of action; (2) where the plaintiff has been prevented from asserting her claims as a result of other extraordinary circumstances; or (3) where the plaintiff asserts her claims in a timely manner but has done so in the wrong forum." Lake v. Arnold, 232 F.3d 360, 370 n. 9 (3d Cir. 2000) (citing Oshiver, 38 F.3d at 1387). Edwards alleges no facts or circumstances that would support equitable tolling in this case. Therefore her claims under §§ 1983 and 1985 must be dismissed as barred by the statute of limitations.

2. Edwards's FHA Claim

Edwards alleges that the Borough violated the FHA by discriminating against her on the

basis of race by polling her neighbors on their opposition to a variance for 334 N. Orange Street, which she was attempting to sell, and by three times denying a variance to allow multiple townhouses on that property. The FHA entitles "an aggrieved person" to "commence a civil action in an appropriate United States district court...to obtain appropriate relief with respect to such discriminatory housing practice or breach." 42 U.S.C. § 3613(a). The sole remaining issue to decide is whether the Borough's alleged conduct violates the FHA, making Edwards an "aggrieved person" entitled to maintain this action against defendants.

For the reasons that follow, I find that the alleged conduct is not within the scope of the FHA's prohibitions. The FHA was enacted to address the problems of racial discrimination leading to housing segregation, not to protect the property values of an individual attempting to get a better purchase price from a developer. As the Third Circuit has noted, "The Fair Housing Act was designed to provide nationwide *fair housing* to minorities who had previously been victims of invidious racial discrimination." Mitchell v. Cellone, 389 F.3d 86, 87 (3d Cir. 2004) (emphasis added) (citing Jones v. Alfred Mayer Co., 392 U.S. 409, 439-440 (1968)). In holding that harassment by other property owners did not violate the FHA, the Seventh Circuit examined the statute's legislative history and concluded that "[t]he Fair Housing Act contains no hint either in its language or its legislative history of a concern with anything but *access* to housing." Halprin v. Prairie Single Family Homes of Dearborn Park Ass'n, 388 F.3d 327, 329 (7th Cir. 2004) (emphasis in original). When Congress amended the FHA in 1988 to broaden its reach and provide for more effective enforcement, members of Congress referred to the FHA's passage in 1968 as a response to the cruelty of being "denied housing because of your race" and "a promise to every American...that we would ensure their right to housing of their choice, free of

discrimination." 134 Con. Rec. H6491 (Aug. 8, 1988) (statements of Rep. Edwards, Rep. Rodino). Edwards has alleged no interference with her access to housing on account of her race. Instead, she has asserted a purely economic harm unrelated to her right to housing, and the FHA does not reach so far.[13]

a. The Denials of Variance Requests Regarding 334 N. Orange Street

Section 3604(b) of the FHA makes it unlawful

> to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

42 U.S.C. § 3604(b). In her opposition to defendants' motion to dismiss, Edwards argues that denying zoning variances to her and not to similarly situated white neighbors was "a clear violation of 3604(b)."[14] (Pl.'s Opp. Mot. Dis. at 7.) Edwards offers no further explanation of

---

[13] That is not to say that the Borough may legally discriminate on the basis of race in its zoning decisions. If Edwards had not allowed the statute of limitations to run, she may have been able to state a claim for violation of equal protection under § 1983.

[14] Most challenges to zoning under the FHA allege violations of § 3604(a), which makes it illegal "[t]o refuse to sell or rent...or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(a). The phrase "otherwise make unavailable" has been interpreted to reach discriminatory practices including zoning restrictions that make housing unavailable for members of certain groups. Le-Blanc-Sternberg v. Fletcher, 67 F.3d 412, 424 (2d Cir. 1995) (citing Huntington Branch, NAACP v. Town of Huntington, 844 F.2d 926, 938 (2d Cir. 1988, aff'd, 488 U.S. 15 (1988) (per curiam)). For example, in Joan Doe v. City of Butler, Pennsylvania, 892 F.2d 315 (3d Cir. 1989), the Third Circuit remanded an FHA claim for consideration of whether the township defendants' zoning ordinance violated § 3604(a) by limiting the number of residents in a transitional dwelling and operating "to limit or exclude women with children in violation of the familial status provision of Title VIII." Id. at 323. See also McCauley v. City of Jacksonville, NC, 829 F.2d 36 (Table) (4th Cir. 1987) (refusal to grant sewer permit prevented developer from building racially integrated housing).

Unlike the plaintiffs in those cases, Edwards does not, and cannot, allege a violation of

how the Borough's actions violated this provision.

It is not clear from the face of the Complaint that Edwards was attempting to sell a "dwelling." 334 N. Orange Street is described only as a "piece[] of real property" with buildings that were likely to be torn down on it. (Compl. ¶¶ 13, 17.) Essentially, Edwards is alleging that the Borough decreased the value of her lot to a developer that planned to tear down the existing building and erect multiple townhouses on the property. Whether sale of a lot to a developer qualifies as sale of a "dwelling" is questionable. Accepting that the property is a "dwelling," however, I will continue to analyze Edwards's claim under the FHA.

The FHA is not implicated in the Borough's decision to deny Edwards a variance, because a variance is not one of the "terms, conditions, or privileges of sale or rental of a dwelling" contemplated by the statute. Those aspects of a property transaction mentioned in § 3604(b), namely the "terms, conditions and privileges of sale or rental," relate to the contract between the buyer and seller, or the lessor and lessee. The language addresses the situation where a seller imposes extra conditions on a sale based upon the race or other protected characteristic of the buyer. It does not address the web of property rights and zoning ordinances affecting ownership of property, which are not master-minded by the seller.

Neither can Edwards argue that the Borough discriminated "in the provision of services...in connection therewith." Id. At least two circuits, the Seventh and the Fourth, have

---

§3604(a), because the Borough's conduct does not "make unavailable or deny[] a dwelling" to her or anyone else on the basis of race. In Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly, 309 F.3d 188 (3d Cir. 2002), the Third Circuit noted, "To our knowledge, no court has stretched the 'make unavailable or deny' language of § 3604(a) to encompass actions that both (1) do not actually make it more *difficult* . . . to obtain housing and (2) do not directly regulate or zone housing or activities within the home." Id. at 158 n.13.

held that "services or facilities" refers to "services generally provided by governmental units such as police and fire protection or garbage collection." Southend Neighborhood Imp. Ass'n v. St. Clair Co., 743 F.2d 1207, 1210 (7th Cir. 1984) (county's administration of properties it holds by tax deeds are not such services); see also Jersey Heights Neighborhood Ass'n v. Glendening, 174 F.3d 180, 193 (4th Cir. 1999) (holding that highway siting decisions do not meet this definition). The grant of a variance for Edward's property is not a municipal service akin to police and fire protection, or garbage collection. Instead it is a discretionary decision comparable to administering city-owned properties or deciding where to site a highway, conduct that is not covered under § 3604(b).

Every zoning decision has the potential to raise or lower property values, ultimately affecting the sale price, but that does not mean that zoning is a government service provided in connection with a private party's sale of a property, such as recording a deed or mortgage. The "services" at issue must relate to the sale of a dwelling, and not just ownership of the dwelling. Although the statute is somewhat vague on the question of what "the provision of services or facilities" modifies, the federal regulations make clear that it is unlawful "to deny or limit services or facilities *in connection with the sale* or rental of a dwelling." 24 C.F.R. § 100.65(a) (emphasis added). As the Seventh Circuit recently noted in a case where plaintiffs challenged a city's failure to enforce zoning laws against waste dumping in their neighborhood under § 3604(b) of the FHA, "unmooring the 'services' language from the 'sale or rental' language pushes the FHA into a general anti-discrimination pose, creating rights for any discriminatory act which impacts property values." Cox v. City of Dallas, 430 F.3d 734, 746 (7th Cir. 2005). The court affirmed summary judgment for the city, because plaintiffs' claims did not show a

connection between the alleged discrimination in enforcing zoning law and the sale or rental of a dwelling; plaintiffs' only injury was that the value of their houses had decreased. Id. at 746-47. Similarly here, Edwards's only alleged injury was that the value of her property was less than it would have been had the Borough granted her a variance, and she has failed to state a claim under §3604(b).

b. The Poll of Edwards's Neighbors Regarding Her Variance Request

Edwards argues that the chair of the Planning Commission's circulation of a poll of neighbors' opinions about her variance request is "a clear violation of 3604(c)," with no further explanation. (Pl's Opp. Mot. Dis. at 7.) The FHA states that it is unlawful

> [t]o make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination.

42 U.S.C. § 3604(c). The circulation of the petition fails to fit the statutorily prohibited conduct. First, Edwards does not allege that the poll did anything but solicit the neighbors' opinions about the variance request. The poll did not indicate any "preference, limitation or discrimination based on race" beyond noting that officials had never circulated such a petition before on a request for a variance. Second, the poll was not a "notice, statement or advertisement, *with respect to the sale* or rental of a dwelling." The poll was about the variance request to build five townhouses, not the sale of a dwelling. It had nothing to do with the race or other protected characteristics of sellers, buyers, or renters of housing on the property. Therefore Edwards cannot claim that the poll violated §3604(c) of the FHA.

c. Edwards's Claim for Retaliation Under the FHA

Finally, Edwards's claim for retaliation under the FHA is without merit.[15] The FHA makes it

> unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise and enjoyment of, any right granted or protected by section...3604."

42 U.S.C. § 3617. Edwards alleges no facts to support retaliation against her under this provision, and offers no explanation for why it applies to the Borough's conduct. She only states that she "participated in many demonstrations over the years against the official policies of defendants which were against African Americans." (Compl. ¶ 11.) The Complaint does not reveal how Edwards was exercising or helping others to exercise rights guaranteed by the FHA, nor does it explain any causal connection between such activity and the denial of a variance. Edwards filed her administrative complaint *after* she was denied a variance three times. Therefore her claim of retaliation under the FHA fails.

**CONCLUSION**

For the reasons set forth above, Edwards's Complaint is dismissed with prejudice. Several of Edwards's claims are precluded by the release she provided to the Borough as part of the agreement to settle her outstanding property violation fines. Edwards's remaining claims under §§ 1983 and 1985 are barred by the statute of limitations. The defendants' alleged conduct

---

[15] If Edwards had filed a timely suit under § 1983, it is possible that she could have stated a claim that the Borough violated her First Amendment rights by refusing her the variance in retaliation for her political activity. However, that claim of retaliation is not before me, because the statute of limitations has run.

in polling neighbors on Edwards's request for a variance at 334 N. Orange Street, and in denying such a variance three times, is not within the scope of the FHA. An appropriate order follows.

**ORDER**

**AND NOW**, this 28th day of April 2006, it is **ORDERED** that:

- Defendants' Motion for Leave to File Reply Brief (Doc. #6) is **GRANTED**. The reply brief was received and considered in deciding defendants' motion.
- Defendant's Motion to Dismiss Plaintiff's Complaint (Doc. # 3) is **GRANTED** and Plaintiff's Complaint is **DISMISSED WITH PREJUDICE**.

Anita B. Brody

ANITA B. BRODY, J.

Copies **VIA ECF** on to: Copies **MAILED** on to:

O:\ABB 2006\Edwards MTD.wpd